MADISON MARSHALL, plaintiff in error, vs. THOMAS J. Mc Griff, assignee of *fi. fa.*, defendant in error.

A. and B. had each a *fi. fa.* against C., A's being the older.    The attorney of A., C., D., and E. agreed, that E. should advance to such attorney, for A., the amount due on A's *fi. fa;* that such attorney should procure a transfer of the *fi. fa.*, from A. to D.; and that C., with D. as his surety, should sign a note to E., for the money so advanced to A's attorney.    All this was done. Subsequently, D. paid up the note given by him and C, to E.    Things being thus, B's *fi. fa.* brought money into Court.

*Held,* That D., as transferree of A's *fi. fa.,* was entitled to priority of payment out of that money, over B.

Rule against Sheriff, in Pulaski Superior Court. Decision by Judge COCHRAN, at Chambers, June, 1857.

This was a motion to have a *fi. fa.,* in favor of Samuel J. Lesseur against John H. Brantly, returned satisfied, and to appropriate money, in the hands of the Sheriff, arising from the sale of Brantly's property, to junior executions.

The following are the facts upon which the judgment of the Court below was rendered :

Lesseur held a *fi. fa.* against Brantly, for one thousand dollars. This *fi. fa.,* which was founded on a judgment of prior date to all others, was levied by the Sheriff, upon certain negroes belonging to Brantly, and which were advertised to be sold on sale day in April, 1856. Upon that day, and before the hour of sale, Brantly proposed to one S. M. Manning, that if he would advance the money on Lesseur's execution, that Thomas J. McGriff would become responsible for the repayment of not only that amount, but also for other demands which he, Manning, held against Brantly. In order to secure his claims, Manning accepted, or assented to the proposition, and so did McGriff, provided he could get the control of the *fi. fa..* Upon consultation with Lesseur's attorney, Mr. Scarborough, he consented to receive the money under this arrangement, and made the transfer of the *fi. fa.* to McGriff, stating to them at the time, that such transfer by attorney was not legal, but that under the decision of the Supreme Court, it was not necessary; but if it became so, he would obtain it. Manning paid the amount of the *fi. fa.* to Scarborough, and received the joint and several note or notes of Brantly and McGriff, for this amount, as well as for his other demands against Brantley. The money was advanced upon the credit, name, and responsibility of McGriff, who signed with Brantley, as trustee of Mrs. Elefair Brantley, wife of defendant. Afterwards, this note was taken up, and

McGriff gave his own note  in  lieu thereof, and  had paid a large portion of it.

Soon afterwards, Madison Marshall had an execution which he held against Brantley  levied  upon  the  same  negroes, which were afterwards sold  by the Sheriff, for about sixteen hundred dollars and which he held  subject  and ready to be paid, as the Court should order.

Marshall ruled the Sheriff to show cause,  why  Lesseur's *fi. fa.* should not  be returned satisfied, and why the money in his hands should not be paid  to  his  and  other younger executions.

Counsel for McGriff insisted, that Lesseur's execution, which had been assigned to  him, was entitled to be paid first out of the fund.

It may be added, that after this controversy arose, Lesseur, upon application  by Scarborough, gave him  a  power of attorney,  to transfer his *fi. fa.* to McGriff, and  if already done, that he fully ratified, and confirmed it.

The Court below decided, that Lesseur's *fi. fa.* was  first entitled to be paid out of the funds in the  hands of the Sheriff.  And to this decision counsel for Marshall excepts.

Cole, for plaintiff in error.

I. L. Harris, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

Lesseurs's *fi. fa.* was older than Marshall's.

The agreement between Scarborough, Lesseur's  attorney, Brantly, the defendant in the two *fi. fas*;  McGriff, Brantley's friend ; and Manning, the monied man ;  was in effect this : That Manning should advance to  Scarborough, the amount due upon the Lesseur *fi. fa.*  That Scarborough should get a transfer of that *fi. fa.*, made by Lesseur to McGriff and that Brantly, with McGriff as  his surety, should  give his note to

Manning, for the money advanced by him to Scarborough, as well as for the debts which he, Manning, already held on Brantley. This agreement was carried out.

If this agreement was valid, it gave to McGriff the absolute right to the *fi. fa.*, on his paying the note made by him and Brantly, to Manning; and, consequently, gave him, in that event, the right to collect the *fi. fa.* out of the money raised by the Marshall *fi. fa.* The agreement was not one for the *satisfaction* of the older *fi. fa.* The only condition on which McGriff would become a party to the agreement, was that the *fi. fa.* should be kept *unsatisfied*, and should be transferred to him, for his security or indemnity, in the event that he had the Manning note to pay.

Was the agreement valid? So far as the parties to it were concerned, there can be no doubt, that it was, if it bound Lesseur. But it did bind him; he ratified the action of his attorney, Scarborough, and made a transfer of the *fi. fa.* to McGriff. And, *omnis ratihabitio retrotrahitur, et mandato priori æquiparatur. Stor. Ag.* § 245.

And it must be equally true, that so far as Marshall, the plaintiff in the younger *fi. fa.*, was concerned, the agreement was also valid, if the agreement was one that could do him no prejudice.

And the agreement was one that could do him no prejudice. The agreement gave to the Lesseur *fi. fa.*, no *additional* advantage whatever, over the Marshall *fi. fa.* The Lesseur *fi. fa.*, being the older of the two, had originally precedence of payment out of Brantly's property. The agreement caused the right to receive this payment, to pass from Lesseur to McGriff. That was all that it did, so far as the efficacy of the *fi. fa.* was concerned. But it was all one to the Marshall *fi. fa.*, who was the person, to receive this payment.

The agreement, then, was valid, as to all concerned.

And it appears, that McGriff, the surety of Brantly to the

Manning note, had paid Manning that note, by substituting his own individual note, for that note.

Consequently, McGriff was the absolute owner of the Lesseur *fi. fa.* And therefore, it must be true, that the Court was right, in giving him precedence of payment over Marshall, out of the money raised by the Marshall *fi. fa.*

But say, that the agreement was not valid. Say, that the want of authority in Scarborough, Lesseur's attorney, to bind Lesseur, rendered the agreement invalid, then still the result would be the same, for in that case, the transfer by Scarborough would be void, and the *fi. fa.* would stand, in all respects, as if no such agreement had been made. Consequently, it would stand *open* as the *fi. fa.* of *Lesseur himself; and he* would be entitled to the precedence over Marshall.

Any way, therefore, the Lesseur *fi. fa.* was entitled to this precedence; and the Court was right in holding it so entitled.

We, therefore, affirm the judgment of the Court below.

Judgment affirmed.